IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 27, 2024 Session

**SHAUN ALEXANDER HODGE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 80222, 100532  G. Scott Green, Judge**

_____

**No. E2023-00676-CCA-R3-ECN**

_____

The Petitioner, Shaun Alexander Hodge, appeals the summary dismissal of his petition for writ of error coram nobis based on alleged newly discovered evidence of a trial witness's criminal history.  Based on our review, we affirm the summary dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and MATTHEW J. WILSON, JJ., joined.

Gena Lewis, Knoxville, Tennessee, for the appellant, Shaun Alexander Hodge.

Jonathan Skrmetti, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; and Charme P. Allen, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In 2001, the Petitioner was convicted by a Knox County Criminal Court jury of the April 26, 1998 first degree premediated murder of Benny Boling, who was "gunned down in the Austin Homes Community of Knox County." *State v. Hodge*, No. E2002-01794-CCA-R3-CD, 2003 WL 22888892, at *1 (Tenn. Crim. App. Dec. 8, 2003), *perm. app.*

*denied* (Tenn. May 10, 2004). We provided the following summary of the case in our 2011 opinion affirming the denial of the Petitioner's 2004 petition for post-conviction relief:

> [I]n February 2001, the [P]etitioner was convicted after trial by jury of the first degree premeditated murder of Mr. Benny Boling. He was sentenced to life in prison with the possibility of parole.
>
> At the [P]etitioner's trial, the forensic evidence established that the victim was slain at a local housing project on April 26, 1998. The victim died after being shot five times by a nine-millimeter semiautomatic handgun. While the victim was initially shot from the rear as he occupied the cab of his pickup truck, he managed to drive himself a short distance away before running off of the road and ultimately fled on foot approximately seventy-five feet up a hill before collapsing near a day care center. There, the victim's body was discovered, with the victim still clutching a $100 bill in his hand. Police recovered a total of seventeen spent shell cartridges from the scene. During the autopsy, the victim's blood tested positive for cocaine.
>
> The murder weapon was never recovered, and none of the forensic evidence definitively connected the [P]etitioner to the victim's shooting. The prosecution's case hinged on the testimony of four eyewitnesses. Debra Turner, who lived in the community, testified that on the day of the shooting, she was at home when she heard someone outside threatening to kill someone if he did not buy drugs. She looked out her back door and saw the [P]etitioner talking to the victim, who was in his truck. After she heard the victim refuse to buy the drugs, she heard a gunshot and saw the victim's truck moving away. The [P]etitioner followed the truck, firing into it. When the truck struck a tree, the victim exited the truck and ran. The [P]etitioner followed him, still firing at the victim. When the victim collapsed, the [P]etitioner stood over him and shot him. Patricia Hamilton, who was visiting Debra Turner at the time of the shooting, testified to essentially the same version of events.
>
> A third witness, Lorraine Young, who lived nearby, testified that she knew the [P]etitioner prior to the shooting. The day prior to the shooting, she saw the victim drive into the housing projects and purchase drugs. On the day of the shooting, Ms. Young was lying in bed when she heard a commotion and looked out her bedroom window. She saw the [P]etitioner and three men standing near the victim's truck having an argument about drugs and money. She heard the victim refuse to buy drugs. She left the

window for a moment and then returned to see the victim crash his truck and flee away on foot while the [P]etitioner shot him.

The final eyewitness, Tim Bolden, testified that he had previously sold the victim crack cocaine and did so on several occasions the day of the shooting. At the time of the shooting, Mr. Bolden was gambling with some other men when he saw the victim drive up, looking to purchase additional drugs. However, Mr. Bolden testified that he continued to gamble and that the [P]etitioner approached the victim's truck. Mr. Bolden testified that he heard loud voices, saw the victim leaving in his truck, and saw the [P]etitioner firing at the victim. After the victim's truck struck a curb, the victim left the truck and fled on foot. The [P]etitioner continued to shoot the victim and, afterward, came back down the hill while the men who were gambling fled the scene.

The defense's theory of the case was that the prosecution's four eyewitness identifications were erroneous and that one of those eyewitnesses, Mr. Tim Bolden, may have been the actual killer. The defense presented the testimony of six eyewitnesses in support of this theory. Latroy Askew, a friend of the [P]etitioner, testified that the two rode around all night on Saturday night and that the [P]etitioner went home before the shootings occurred on Sunday. Ms. Glenda Ward, who lived in a complex near the crime scene, testified that she looked out her window one day and saw one man chasing another man up a hill before shooting him. She testified that the shooter was not the [P]etitioner. Reginald Woodruff, a childhood friend of the [P]etitioner, testified that the [P]etitioner came to his house the morning of the shooting and stayed with him, his son, and another man while they were playing video games. Pierre Jarrett, who was playing basketball nearby at the time of the shooting, testified that he heard shots, saw a truck move up a hill before coming to a stop, and saw a man who was not the [P]etitioner standing nearby with a gun. Paul Chandler, a retired army officer who was collecting cans in the area when the shooting occurred, testified that he saw the murder and that the [P]etitioner was not the shooter. Malik Hardin, the [P]etitioner's cousin, testified that he was with the [P]etitioner at the time of the shooting and that Mr. Tim Bolden had, in fact, shot the victim while the [P]etitioner was gambling with others nearby. In addition to these eyewitnesses, the defense presented the testimony of two witnesses who testified that Debra Turner had made statements to them to the effect that she intended to falsely implicate the [P]etitioner in the victim's murder in order to retaliate against the [P]etitioner for beating and hospitalizing her son.

*Hodge v. State*, No. E2009-02508-CCA-R3-PC, 2011 WL 3793503, at *1-2 (Tenn. Crim. App. Aug. 26, 2011), *perm. app. denied* (Tenn. Feb. 15, 2012).

On November 5, 2012, the Petitioner filed a petition for writ of error coram nobis in which he alleged newly discovered evidence of Patricia Hamilton's April 2012 recantation of her eyewitness identification. *Hodge v. State*, No. E2014-01005-CCA-R3-ECN, 2015 WL 4111767, at *3 (Tenn. Crim. App. July 8, 2015), *perm. app. denied* (Tenn. Dec. 10, 2015). In support, the Petitioner attached Ms. Hamilton's sworn affidavit in which she stated that after her cousin, Debra Turner, exited the apartment, she heard gunshots, looked out the window, and saw a person in a dark hoodie running toward the victim but did not see the person's face. *Id.* She stated that her identification of the Petitioner as the shooter was based on what Ms. Turner told her when she came back inside the apartment. *Id.*

However, at the error coram nobis hearing, Ms. Hamilton backed off the statements in her affidavit, testifying that her memory had faded over the years and she was unsure whether she had been telling the truth when she testified at trial that she saw the shooter's face and recognized him as the Petitioner. *Id.* at *4. The error coram nobis court therefore denied the petition, finding that it "was 'not reasonably well satisfied that the prior testimony was false' and that it 'need not reach the issue of whether the "new evidence" may have resulted in a different judgment had it been presented at trial.'" *Id.*

On May 26, 2022, the Petitioner filed a second petition for writ of error coram nobis alleging newly discovered evidence of Ms. Hamilton's record of criminal charges and convictions in Georgia that had not been disclosed at his trial. *Hodge v. State*, No. E2022-009110-CCA-R3-ECN, 2023 WL 5164587, at *3 (Tenn. Crim. App. Aug. 11, 2023), *no perm. app. filed*. The Petitioner asserted that the information had recently been discovered by Black Lives Matter, which had obtained Ms. Hamilton's criminal record through utilization of Georgia's public records act. *Id.* As an exhibit, the Petitioner attached 187 pages of records from Georgia, including documents that appeared to show that Ms. Hamilton was convicted in July 1996 of the sale of cocaine "and sentenced to twelve years with two years to be served followed by ten years on probation[,]" and was convicted in January 1999 of one count of theft and sentenced to two years' incarceration. *Id.* at *4.

The error coram nobis court summarily dismissed the petition, finding, among other things, that Ms. Hamilton's Georgia criminal record did not constitute newly discovered evidence because the convictions were matters of public record that could have been discovered through due diligence at any time during the prior two decades, including by directly questioning Ms. Hamilton during the hearing on the Petitioner's earlier petition for

writ of error coram nobis. *Id.* at *5. This court affirmed the habeas court's summary dismissal of the petition, concluding that the Petitioner failed to allege facts sufficient to justify tolling of the statute of limitations and that, even assuming that Ms. Hamilton's 1999 theft conviction had constituted newly discovered evidence, there was no reasonable basis to conclude that that the results of the Petitioner's trial would have been different had the information been available to the Petitioner at trial:

> Four witnesses, including Ms. Hamilton, identified Petitioner as the person who shot and killed [the victim]. Contrary to Petitioner's claims in the Petition and in the brief, Ms. Hamilton was not presented by the State to the jury "as essentially pristine," nor was she "unscathed in the eyes of the jury." The jury knew from the direct examination that Ms. Hamilton was a felon who had been convicted of selling cocaine. The jury knew as a result of the cross-examination that she was convicted thief. We determine that there is not "a reasonable basis" to conclude that the results of the trial "might have been different" if the jury had known that Ms. Hamilton's admitted theft conviction had occurred less than, rather than more than, ten years before the trial or if the Petitioner had been able to impeach Ms. Hamilton's testimony concerning the date of her theft conviction.

*Id.* at *7.

On April 4, 2023, while the appeal of the denial of his second petition for writ of error coram nobis was pending, the Petitioner filed the petition at issue in this case, which he styled as a "Motion to Reopen Post-Conviction Petition and Original Petition for Error Coram Nobis." The Petitioner alleged in the instant petition that Ms. Hamilton provided "materially false testimony" at his trial by not disclosing her more recent theft conviction and by testifying that she lived in Georgia but was staying with her cousin at the time of the shooting. The Petitioner asserts that the latter statement is false because "[a]t the time of the crime, Ms. [Hamilton] was in violation of her probation and facing a series of new theft charges in Georgia," which meant that she "was either not in Tennessee at all at the time of the crime, because she was in jail in Georgia[,] or she was an absconder from probation who was hiding out with Ms. Turner from the probation violation and new charges." The Petitioner alleged that the information regarding Ms. Hamilton's criminal status "could not have been discovered with reasonable diligence" because "the clerk of the court holding the records establishing the claim has stated that the records do not exist." In support, the Petitioner attached an "Affidavit of Due Diligence" in which Investigator Cynthia A. Howell described her unsuccessful attempts to obtain Ms. Hamilton's criminal records, which included having been informed by the deputy court clerk of the Gordon

- 5 -

County, Georgia Superior Court that the clerk's office had no records under Ms. Hamilton's name.

On April 11, 2023, the error coram nobis court summarily dismissed the "Motion to Reopen Post-Conviction Petition and Original Petition for Error Coram Nobis[,]" referencing its June 7, 2022 dismissal of the second petition for writ of error coram nobis. The Petitioner filed a notice of appeal to this court on May 8, 2023. On May 16, 2023, the State filed a motion to dismiss the portion of the appeal relating to the Petitioner's attempt to appeal the denial of his motion to reopen his post-conviction petition. On May 31, 2023, we granted the State's motion and ordered that the appeal proceed solely on the error coram nobis claim. *Hodge v. State*, No. E2023-00676-CCA-R3-ECN, Order (May 31, 2023).

## ANALYSIS

The Petitioner contends that the error coram nobis court abused its discretion in its summary dismissal of his petition, arguing that he stated a colorable claim and was reasonably diligent in discovering the new evidence. He asserts that Ms. Hamilton's pending theft charges at the time of the shooting shows that she was likely not innocently visiting relatives in Tennessee as she claimed during her trial testimony but instead was hiding out with Ms. Turner, which gave her a motive to agree with Ms. Turner's retaliatory identification of the Petitioner as the shooter. He argues that his trial counsel had no reason to search for the undisclosed criminal history given Ms. Hamilton's deception in not mentioning it at trial, and that his investigator reasonably relied on the Georgia court clerk that the records did not exist. The State responds by arguing that the error coram nobis court properly exercised its discretion in summarily dismissing the petition because it was filed more than twenty years after the judgment became final and the alleged newly discovered evidence was a matter of public record that could have been discovered with reasonable diligence.

A writ of error coram nobis is an extraordinary remedy by which the court may provide relief from a judgment under only narrow and limited circumstances. *State v. Mixon,* 983 S.W.2d 661, 666 (Tenn. 1999). The writ of error coram nobis is codified in Tennessee Code Annotated section 40-26-105, which provides in pertinent part:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which

- 6 -

were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b). Generally, a decision whether to grant a petition for a writ of error coram nobis rests within the sound discretion of the trial court. *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995), *perm. app. denied* (Tenn. Oct. 30, 1995).

"In order to qualify as newly discovered evidence, 'the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible.'" *Nunley v. State*, 552 S.W.3d 800, 816 (Tenn. 2018) (quoting *Payne v. State*, 493, S.W.3d 478, 484-85 (Tenn. 2016)). To be considered "without fault," the petitioner must show that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." *State v Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007). "[C]oram nobis petitions with inadequate allegations are susceptible to summary dismissal on the face of the petition, without discovery or an evidentiary hearing[.]" *Nunley*, 552 S.W.3d at 831.

A petition for a writ of error coram nobis must be filed within one year after the judgment becomes final. Tenn. Code Ann. § 27-7-103. The one-year statute of limitations may, however, be tolled on due process grounds. *Nunley*, 552 S.W.3d at 828-29 (citation omitted). If a petition for a writ of error coram nobis fails to show on its face either that it has been timely filed in accordance with Tennessee Code Annotated section 27-7-103 or specific facts showing why the petitioner is entitled to equitable tolling of the statute of limitations, the trial court is within its discretion to summarily dismiss it. *Id.* at 829. Although the decision to grant or deny coram nobis relief rests within the sound discretion of the trial court, *see Vasques*, 221 S.W.3d at 527-28, "[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." *Nunley*, 552 S.W.3d at 830 (citation omitted).

As explained in *Workman v. State*, in determining whether to toll the statute of limitations, a court must weigh the petitioner's interest in obtaining a hearing to present a later-arising ground for relief against the State's interest in preventing stale and groundless claims. 41 S.W.3d 100, 103 (Tenn. 2001). Courts should use the following three-step process to balance these interests:

(1) determine when the limitations period would normally have begun to run;

(2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and

(3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Harris v. State*, 301 S.W.3d 141, 145 (Tenn. 2010) (quoting *Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995) (both overruled on other grounds)).

We agree with the State that the error coram nobis court's summary dismissal of the petition was proper. As the State points out, this court has previously concluded that the Petitioner's delayed receipt of Ms. Hamilton's criminal records was insufficient to toll the one-year statute of limitations:

> Petitioner acknowledged that the one-year statute of limitations expired on August 25, 2003. Therefore, we must determine whether the Petition contained adequate information demonstrating that Petitioner is entitled to equitable tolling of the statute of limitations. Petitioner claimed that he and his family reached out to Black Lives Matter; that in April 2022, Black Lives Matter used Georgia's public record act to obtain Ms. Hamilton's criminal records; that he did not receive copies of the criminal record until April 11, 2022; and that he filed the Petition within two months of receiving the information. The Petition does not explain when or how Petitioner became aware of the fact that Ms. Hamilton had or might have had a criminal record in Georgia, when Petitioner and his family reached out to Black Lives Matter, or why it took almost two decades for Petitioner to inquire into Ms. Hamilton's Georgia criminal record. Although the Petition contained adequate information to show that Petitioner filed the Petition within one year of receiving Ms. Hamilton's criminal records, it did not provide sufficient facts showing Petitioner was reasonably diligent in discovering Ms. Hamilton's past criminal records, nor did it explain why the newly discovered evidence could not have been discovered in a more timely manner with the exercise of reasonable diligence. The Petition on its face did not contain adequate allegations to toll the statute of limitations, and the coram nobis court did not abuse its discretion by summarily dismissing the petition without an evidentiary hearing. *See Nunley*, 552 S.W.3d at 826.

*Hodge v. State*, 2023 WL 5164587, at *6.

The instant petition is based on the same alleged newly discovered evidence of Ms. Hamilton's previously undisclosed Georgia criminal history. The Petitioner again fails to

allege sufficient facts to justify the tolling of the statute of limitations. The only new information added to the instant petition is the affidavit of the Petitioner's investigator detailing her unsuccessful efforts to locate the records in Georgia. We note that in the affidavit, the investigator stated that the deputy court clerk told her that she could not find Ms. Hamilton in her system and that the old files would be in their archives. When the investigator later went to Georgia to view the archived records that had been located, the records of Ms. Hamilton's 1999 theft conviction were not included. The Petitioner again fails to offer any explanation as to how he learned of Ms. Hamilton's theft conviction or how Black Lives Matters was able to obtain the records when his investigator could not, or why he did not seek the records at the time of trial when they may not have yet been archived. Moreover, as we previously concluded, even assuming, *arguendo*, that the Petitioner was able to show that the records were impossible to obtain at the time of trial through the exercise of due diligence, there is not a reasonable basis to conclude that the information about Ms. Hamilton's recent theft conviction and possible probation violation would have affected the outcome of the trial. "Newly discovered evidence that is merely cumulative or serves no other purpose than to contradict or impeach does not warrant coram nobis relief." *State v. Hall*, 461 S.W.3d 469, 495 (Tenn. 2015) (citations and internal quotations omitted). We, therefore, affirm the summary dismissal of the petition.

## CONCLUSION

Based on our review, we affirm the judgment of the error coram nobis court summarily dismissing the petition.

_____
JOHN W. CAMPBELL, SR., JUDGE